**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

      Plaintiff,

v.                                                                           No. CR 17-2583 JCH

DAVID LUNA-GOMEZ,
Aka Sergio Sauzameda,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

On March 21, 2018, Defendant David Luna-Gomez ("Defendant") filed an Amended Motion for Order Compelling Specific Discovery (ECF No. 71). The Court, having considered the amended motion, briefs, arguments, and applicable law, concludes that Defendant's request to order the Government to preserve the law enforcement reports and notes of the interview of co-Defendant Elizabeth Ordonez-Ochoa will be granted, but the motion will otherwise be denied.

**I.    BACKGROUND**

On May 20, 2016, Senior United States District Judge James A. Parker authorized the interception of wire and electronic communications over a phone number ("Romero Phone 4"). After that interception ceased, Judge Parker issued another order authorizing the interception of wire and electronic communications over another phone number ("Luna-Gomez Phone 1") for a period of 30 days.

A federal grand jury returned a three-count indictment charging Defendant Luna-Gomez with two counts: (1) conspiracy to distribute 50 grams and more of methamphetamine from on or about May 23, 2015, and continuing to on or about December 19, 2016; (2) conspiracy to

distribute 1 kilogram and more of heroin from on or about June 1, 2016, and continuing to on or about June 22, 2016. In Count 2, the Government charges that Defendant Luna-Gomez conspired with co-Defendants Emigdio Villanueva, Olivia Ceniceros-Favela, and Elizabeth Ordonez-Ochoa. Count 3 additionally charges Ms. Ordonez-Ochoa and Ms. Ceniceros-Favela with possession with intent to distribute 1 kilogram and more of heroin on June 22, 2016.

The Government asserts that it has disclosed all applications, affidavits in support thereof, and orders regarding the wire and electronic interceptions to Defendants. Defendant acknowledges the Government has disclosed "a significant amount of discovery." Def.'s Mot. 2, ECF No. 71. Defendant Luna-Gomez nonetheless filed a motion seeking four specific items of discovery he had not received to which he claims he is entitled: (1) all reports on Ms. Ordonez-Ochoa's June 22, 2016 arrest for the charged crimes; (2) all interview reports and law enforcement notes regarding Ms. Ordonez-Ochoa; (3) the audio recording of Ms. Ordonez-Ochoa's interview; and (4) the GPS Search Warrant regarding Mr. Luna-Gomez's Phone 1. In support of his request, Defendant Luna-Gomez provided a partial Drug Enforcement Administration investigative report containing the following information from the interview with Ms. Ordonez-Ochoa:

> [Ms. Ordonez-Ochoa] stated that she was recruited by a person named Carlos Omar Cervantes-Hernandez. Ordonez stated that this was the seventh occasion she had transported heroin and was going to deliver the heroin to a person [in] Albuquerque, NM. Ordonez stated that she has delivered to "Emilio" on 3 occasions along with Carlos Omar. Ordonez stated that [she] also delivered to "Emilio" by herself twice. Ordonez stated that she has delivered to an unk[n]own male called "El Viejon" by herself once. Ordonez stated that she had also delivered heroin to Albuquerque on three different occasions by herself with the instruction of Carlos Omar Cervantes-Hernandez. Ordonez stated that she and her husband live next to Carlos Omar Cervantes-Hernandez in Juarez, Mexico.

Def.'s Ex. A, ECF No. 74-1. According to Defendant, the report contains exculpatory material because Ms. Ordonez-Ochoa did not identify Mr. Luna-Gomez as a person to whom she had

allegedly delivered drugs in Albuquerque prior to her arrest, nor did she identify Mr. Luna-Gomez as a person she had met in the past. Because the contents of the report relate to Count 2 in which he is charged, Defendant Luna-Gomez argues that the report and interview are items material to his defense and subject to Rule 16 and *Brady* disclosure.

The Government asserts that it is unaware of any audio recording of the post-arrest interview of Ms. Ordonez-Ochoa. It also states that it moved to unseal the warrant affidavit for the Luna-Gomez Phone 1 and, after the Court granted the motion, disclosed it, so only Defendant's first and second requests remain at issue. The Government argues that neither the law enforcement reports nor the notes are discoverable under Rule 16 or *Brady/Giglio*.

## II. GENERAL LAW ON DISCOVERY

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the government must disclose to the defendant, upon his request, papers and documents, "if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). The term "defense" means a defendant's response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged. *United States v. Armstrong*, 517 U.S. 456, 462 (1996).

A defendant must make a prima facie showing of materiality before he is entitled to obtain Rule 16 discovery. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* To show materiality under Rule

16(a)(1)(E), the evidence must "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication it would enable the defendant to significantly alter the quantum of proof in his favor. *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996).

Rule 16(a)(2) limits the scope of discoverable materials: "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The Supreme Court has described Rule 16(a)(2) as protecting "Government work product in connection with [the] case." *Armstrong*, 517 U.S. at 463. Rule 16(a)(2) also clarifies that Rule 16 does not authorize the disclosure of statements made by prospective witnesses, except as provided in 18 U.S.C. § 3500, the Jencks Act. The Jencks Act requires the United States to disclose to the defendant the statements of its witnesses after the witness has testified on direct examination at trial, but the term "statement" is limited to written statements made by the witness and signed or otherwise adopted or approved by her, or to recordings or substantially verbatim recitals of the witness's oral statements and recorded contemporaneously with the making of such oral statement. *See* 18 U.S.C. § 3500(a), (b), (e).

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The "touchstone of materiality is a 'reasonable probability' of a different result," which exists "when the government's evidentiary suppression 'undermines

confidence in the outcome of the trial.'" *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). Impeachment evidence affecting a witness's credibility falls under *Brady* when the reliability of a given witness may be determinative of a defendant's guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

### III. LEGAL ANALYSIS

As an initial matter, the Government has asserted that it is unaware of and not in possession of an audio recording of the post-arrest interview of Ms. Ordonez-Ochoa. The Court will not require disclosure of an item that the Government does not have. In addition, the request to order the production of the GPS Search Warrant regarding Mr. Luna-Gomez's Phone 1 will be denied as moot. The Court will therefore turn to whether it must compel disclosure of the reports and investigative notes regarding the arrest and interview of Ms. Ordonez-Ochoa.

Law enforcement reports prepared by federal government agents and non-federal personnel whose work contributes to a federal criminal case qualify for the Rule 16(a)(2) discovery exemption when they are turned over to the federal prosecutor for use in a federal investigation. *See United States v. Fort*, 472 F.3d 1106, 1113, 1118-20 (9th Cir. 2007). An agent's reports or rough interview notes may nevertheless be discoverable under *Brady* if the defendant shows that the notes are exculpatory and material, or would have been useful to impeach the credibility of key prosecution witnesses. *See United States v. Sullivan*, 919 F.2d 1403, 1426-27 (10th Cir. 1990). Notes and reports of agents may also be producible after direct examination of a witness if they constitute "statements" of the witness under the Jencks Act. *See United States v. Smith*, 984 F.2d 1084, 1086 (10th Cir. 1993) ("Interview notes could be 'statements' under the Act if they are substantially verbatim.").

The Government argues that the requested information at issue is work product protected by Rule 16(a)(2), and thus, is not discoverable under Rule 16. The Government also asserts that it has yet to identify which witnesses it will call at trial and, in any event, none of the reports constitute statements within the meaning of the Jencks Act. Based on the record, the Court agrees that the requested material falls within Rule 16(a)(2)'s discovery exception and additionally is not subject to disclosure under the Jencks Act at this time.

As the Government acknowledges, Rule 16(a)(2)'s discovery exclusion does not exempt *Brady* material. The Government nonetheless asserts that Defendant's suggestion that Ms. Ordonez-Ochoa did not implicate him is wrong. According to the Government, Special Agent David Howell swore in his wiretap affidavit that Ms. Ordonez-Ochoa in her interview provided a contact phone number that she was supposed to call when she arrived in Albuquerque. Special Agent Howell averred that the phone number corresponded with a phone number Defendant Luna-Gomez gave in an application for a gym membership. The Government thus contends that, contrary to Defendant's speculation, there was nothing exculpatory in the interview. The Government further asserts that, even if another agent summarized the same interview and did not include all the information that another agent included in his own report, the report is not exculpatory and subject to disclosure because of the omission. The Government further argues that to the extent the information would be helpful to his defense, Defendant already has a summary of the encounter, arrest, and interview of Ms. Ordonez-Ochoa set forth in the wiretap affidavit, and thus, Defendant really appears to be seeking the information to challenge the wiretap affidavit in the case, rather than to support a direct defense to the charges.

The Court finds that Defendant has not met his burden of showing that the reports or notes contain exculpatory material. Although the partial DEA report suggests that Ms. Ordonez-

Ochoa did not name Defendant Luna-Gomez in her interview, the omission does not establish that she exculpated him. In certain contexts, the failure to identify a Defendant may be exculpatory, but examining the record here, the failure to identify Defendant appears of neutral relevance. Although the failure to include a key fact in a report could serve as potential impeachment evidence during trial, at this stage, before the United States has identified its witnesses, it is unclear if any impeachment value will materialize. *See United States v. Johnson*, 581 F.3d 320, 331 (6th Cir. 2009) (explaining that the duty to disclose *Brady* material "extends to impeachment evidence, but only if the evidence is favorable to the accused in the sense that it would allow him to impeach government witnesses").

Defendant requests that the Court order the preservation of all rough interview notes made by law enforcement agents during witness interviews in the case. Although the Court finds that Defendant has not met his burden to show that any notes contain exculpatory information, the United States has a continuing duty to review such notes to determine if any information in the notes is subject to disclosure under the Jencks Act, *Brady*, *Kyles*, and *Giglio*. If there is a close question of whether information in the notes is subject to disclosure, the Government should present the notes to the Court for *in camera* inspection. By the time of trial or when the Government determines the witnesses it may call at trial, the notes could potentially contain evidence of impeachment value. The Court will therefore require their preservation to ensure the Government is able to fulfill its continuing duty to comply with *Brady*, *Giglio* and the Jencks Act. *See United States v. Lujan*, 530 F.Supp.2d 1224, 1267 (D.N.M. 2008) ("Because the contents of rough interview notes may in some cases be subject to disclosure and because the potential impeachment value of the notes may not become evident until trial, I will grant

Defendants' request for an order to preserve rough interview notes made by law enforcement agents during interviews of potential witnesses.").

**IT IS THEREFORE ORDERED** that Defendant Luna-Gomez's Amended Motion for Order Compelling Specific Discovery (**ECF No. 71**) is **GRANTED** as to the request to order the Government to preserve the law enforcement reports and rough interview notes of the interview of co-Defendant Ordonez-Ochoa, but is otherwise **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**